**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

---

| | |
|---|---|
| **CHAMBERLAIN GROUP LLC.,** | : |
| **Plaintiff,** | : |
| *v.* | : Case No. 24-198 |
| **UNITED STATES OF AMERICA,** | : |
| **Defendant.** | : |

---

## COMPLAINT

Plaintiff, CHAMBERLAIN GROUP LLC., by and through its undersigned counsel, for its Complaint in this matter against Defendant, the UNITED STATES, does hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1. This action is commenced by Plaintiff, Chamberlain Group LLC ("Chamberlain"), to contest the denial of its protest against the classification, in liquidation, of certain garage door intercoms.

## PARTIES

2. Plaintiff Chamberlain Group LLC is a corporation organized and existing under the laws of the State of Delaware and headquartered in Oak Brook, Illinois. Plaintiff is engaged in the manufacture and importation of automatic garage door openers, gate operators, traffic and access control devices and related accessories. Chamberlain acted as importer of record ("IOR") for the entries which are at issue in this action.

3. Defendant United States is the federal defendant. The actions complained of herein were undertaken by its agency U.S. Customs and Border Protection ("Customs" or "CBP"), which is a component of the U.S. Department of Homeland Security ("DHS").

## JURISDICTION AND VENUE

4. This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

5. All liquidated duties, taxes and fees were paid prior to the filing of this action.

## STATEMENT OF FACTS

6. The merchandise at issue consists of certain CAPXLVMC series intercoms (hereinafter "CAP intercoms") manufactured in Mexico with components from several countries, including a printed circuit board assembly (PCBA) made in the People's Republic of China (PRC).

7. Chamberlain had previously entered these goods as Products of China, and had deposited Section 301 retaliatory tariffs in accordance with subheading 9903.88.05, Harmonized Tariff Schedule of the United States ("HTSUS").

8. The CAP intercom is an entryway intercom with an integrated camera and 10" video touch display screen. It allows for two-way voice communication, and the video camera has a 135 degree field of vision.

9. The device can be used to control as many as 4 entry points from a single dashboard. The system can be accessed from a smart phone and used to connect different gate operators.

10. The CAP intercom captures video images and can store them either locally or in the cloud. The intercom operates on Chamberlain's "MY Q Community" web platform.

11. The intercom uses voice over internet protocol (VOIP). It has connectivity over Wi-Fi, cellular, wired high-speed and DSL networks.

12. Chamberlain produces the product in Mexico through the assembly of components, including but not limited to, printed circuit board assemblies (PCBAs), wire harnesses, cables, terminal blocks, molded parts, standing steel, a touch-operated video screen, coaxial cable, a camera assembly, a wide range of microcomponents, fasteners, solder and other components.

13.     The Bill of Materials for this device contains 323 discrete types of materials and components used in producing the CAP Intercom.

14.     One of the components of the product is a Chinese printed circuit board assembly (PCBA), which accounts for a portion of the cost of the product.

15.     Creation of this product in Mexico requires that work be performed by skilled labor at dozens of workstations, using specialized equipment.

16.     As imported into Mexico, none of the components have the name "intercom." None of them have the character of a finished, ready-to-use electronic device. None of them can perform any of the video, audio, signaling or wireless functions of the finished Cap Intercom.

17.     After a thorough assessment, Plaintiff determined the Cap Intercom is in fact a product of Mexico, having been created in that country by a series of manufacturing operations which constitute a "substantial transformation" in the creation of new and different articles of commerce, having a name, character and use distinct from its component materials and parts.

18.     On various dates between April 2023 and November 2023, Customs liquidated the subject entries, classifying the Cap intercoms under Harmonized Tariff Schedule subheading 8517.62.00, HTSUS and assessing in liquidation retaliatory duties at the rate of 25% ad valorem imposed on products of China pursuant to subheading 9903.88.05, HTSUS.

19.     Between August 2023 and November 2023, Plaintiff timely protested CBP's liquidation determinations to impose retaliatory duties on the Cap Intercoms under subheading 9903.88.05, HTSUS, arguing that the Cap Intercom underwent a substantial transformation in Mexico.

20. CBP denied Plaintiff's Protest in full on October 21, 2024. CBP's denial states "The essential component/character of the CAP Intercom is the printed circuit board assembly (PCBA). The country of origin of the PCBA is China." *See* ECF 6-2 at 2.

## **COUNT I**

21. Plaintiff realleges and incorporates herein all prior allegations.

22. United States Customs and Border Protection uses the test of "substantial transformation" to determine the country of origin of imported goods for purposes of determining whether goods are "Products of China" for purposes of application of retaliatory duties imposed pursuant to Section 301 of the Trade Act of 1974.

23. Under the "substantial transformation" test, where goods or their materials are produced in two or more countries, the country of origin is the country where the good last underwent a "substantial transformation" prior to entering the United States. The United States Supreme Court has defined a "substantial transformation" as a working or processing which creates a new and different article of commerce, having a name, character, or use different than that of its components. *Anheuser-Busch Brewing Assn. v. United States*, 207 U.S. 556, 562. The test requires that "There must be transformation; a new and different article must emerge, "having a distinctive name, character or use."

24. The trade courts have held that "substantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *Torrington v. United States*, 764 F. 2d 1563, 1568 (Fed. Cir. 1985) (citation omitted). However, because "[t]he article need not experience a change in name, character, and use to be substantially transformed," all three of these elements need not be met before a court may find substantial transformation. *Koru North America v. United States*, 701 F. Supp. 229, 234 (Ct. Int'l Tr. 1988) (emphasis added).

25. This Court has recently stated in *Cyber Power Systems (USA) Inc. v. United States*, 560 F. Supp. 3d 1347, 1354 (Ct. Int'l Tr. 2022) that Custom's:

> proposed focus on the PCBA and the application of an 'essence' or 'critical component' test here is without merit. The Government's suggestion to focus solely on the PCBA components of the subject merchandise may well undermine the objective of the 'substantial transformation' test, namely to focus on a change in name, character, or use.

26. The Cap Intercoms created in Mexico are new articles of commerce, which have a name different than that of any of their constituent materials or components—i.e., a PCBA.

27. The Cap Intercoms created in Mexico have a character different than that of their component parts and materials. They are ready-to-use electromechanical devices dedicated to a particular purpose, rather than their discrete parts and components which could have seen used to manufacture all manner of finished goods.

28. The Cap Intercoms have a different use than any of their constituent components or materials.

29. The Cap Intercoms created in Mexico have a character different than that of their component parts and materials. They are a consumer-ready good, in contrast to its various components, which are "producer's goods", fit only for use in manufacturing.

30. The Cap Intercoms the finished CAP intercom has numerous uses (voice communications, video communications and recording, wireless control of items on the Internet), none of which can be performed by its components, individually or collectively.

31. The Cap Intercoms are products of a substantial transformation in Mexico, having Mexican origin.

32. Defendant erred in denying Plaintiff's Protest which challenged the imposition of tariffs on the Cap Intercoms pursuant to subheading 9903.88.05, HTSUS.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor, directing Defendant to reliquidate the entries at issue as products of Mexico, and refunding all duties imposed pursuant to subheading 9903.88.05, HTSUS, plus interest as provided by law; and providing Plaintiff with such other and further relief as this Court may deem just.

Respectfully submitted,

NEVILLE PETERSON LLP

 /s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

*Counsel for Plaintiff Chamberlain Group LLC*

Dated: April 28, 2025